**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

CENTER FOR BIOLOGICAL
DIVERSITY, SIERRA CLUB, and
SOUTH FLORIDA WILDLANDS
ASSOCIATION,

        Plaintiffs,

    v.

BRIAN NESVIK, in his official capacity as
Director of the United States Fish and
Wildlife Service; LARRY WILLIAMS, in
his official Capacity as State Program
Supervisor of the Florida Ecological
Services Office of the United States Fish and
Wildlife Service; DOUG BURGUM, his
official capacity as Secretary of the United
States Department of the Interior; LT.
GEN. WILLIAM H. GRAHAM, JR., in
his official capacity as Chief of Engineers
and Commanding General of the United
States Army Corps of Engineers; and COL.
BRANDON BOWMAN, in his official
capacity as District Commander of the
Jacksonville District of the United States
Army Corps of Engineers,

and

TARPON BLUE SILVER KING I, LLC,
d/b/a COLLIER ENTERPRISES,

        Defendants.

Case No. 2:26-cv-01072-SPC-DNF

**DEFENDANT TARPON BLUE SILVER KING I, LLC'S MOTION TO TRANSFER**

In the interests of efficiency and consistency, and pursuant to Local Rule 1.07,

Defendant Tarpon Blue Silver King I, LLC, d/b/a Collier Enterprises ("Collier")

respectfully moves to transfer this case to Judge Kyle Dudek, who is currently

presiding over a related case presenting overlapping issues. *See Nat'l Audubon Soc'y, Inc. v. U.S. Army Corps of Eng'rs*, No. 2:25-cv-684 (M.D. Fla.) (filed Aug. 1, 2025).

## MEMORANDUM OF LAW

Plaintiffs allege that the U.S. Fish and Wildlife Service (FWS) and U.S. Army Corps of Engineers (Corps) violated the Endangered Species Act (ESA) and Administrative Procedure Act (APA) by failing to use the best available data, failing to properly assess the environmental baseline, and relying on insufficient monitoring of the Florida panther when issuing federal approvals of a development project in Southwest Florida. Plaintiffs' allegations mirror those in a complaint filed eight months ago by the National Audubon Society in this district against the same federal agency defendants challenging the same types of agency actions and environmental reviews of a separate development project in Southwest Florida. The two suits involve residential development projects located within 10 miles of each other in neighboring counties. The latter case is currently pending before Judge Dudek, who has already decided a preliminary injunction motion and set a May 8 deadline for dispositive motions.

To help ensure consistency and avoid the risk of inconsistent outcomes, Collier respectfully requests that this case be transferred to Judge Dudek. *See* Local Rule 1.07(a)(2)(B).[1]

---

[1] Collier has filed a Notice of Related Action pursuant to Local Rule 1.07(c). *See* Doc. 17.

## BACKGROUND

### I.     The Kingston Case

National Audubon Society filed its complaint in Case No. 2:25-cv-684 on August 1, 2025. *See* Compl., *Nat'l Audubon Soc'y, Inc.*, No. 2:25-cv-684 (M.D. Fla. Aug. 1, 2025) ("Kingston Case"), Doc. 1. The case concerns the FWS's Biological Opinion and the Corps' Clean Water Act (CWA) § 404 permit for the Kingston Project, "a proposed 10,000-home development on natural and former agricultural lands in southeastern Lee County, Florida." Am. Compl. ¶ 1, Kingston Case, Doc. 27. National Audubon Society alleges that the federal defendants violated the ESA, APA, CWA, and National Environmental Policy Act (NEPA). *Id.* ¶¶ 105-30.

National Audubon Society's first claim for relief challenges the Kingston Biological Opinion's treatment of the Florida panther under the ESA and APA. *Id.* ¶¶ 106-110. It focuses on the analysis of effects on the Florida panther, alleging that the Biological Opinion "failed to 'use the best scientific and commercial data available' in determining that the project will not jeopardize" the Florida panther, *id.* ¶ 107, "arbitrarily and capriciously evaluated the current status and environmental baseline of the listed species, the effects of the action, and cumulative effects on the listed species," *id.* ¶ 108, and "fail[ed] to specify both the amount of take and clear triggers at which allowable incidental take is exceeded and the FWS must reinitiate consultation," *id.* ¶ 109. And National Audubon Society criticizes the analytical and legal framework employed by FWS to consider offsite collisions between vehicles and

3

panthers. *Id.* ¶¶ 60-62. National Audubon Society asks the Court to, among other things, declare violations of the ESA and APA, vacate and set aside the Biological Opinion and CWA § 404 permit, and enjoin all construction activities authorized by those approvals. *Id.* ¶ 131.

The federal defendants answered the amended complaint on December 2, 2025. Kingston Case, Doc. 30. On December 23, 2025, National Audubon Society moved for a preliminary injunction. Kingston Case, Doc. 34. After full briefing, the Court denied the motion in a 21-page opinion. Kingston Case, Doc. 80; *see Nat'l Audubon Soc'y, Inc. v. U.S. Army Corps of Eng'rs*, No. 2:25-CV-684-KCD-DNF, 2026 WL 809573 (M.D. Fla. Mar. 24, 2026). The federal defendants have filed the certified indices to the administrative record, Kingston Case, Doc. 81, and dispositive motions are due by May 8, Kingston Case, Doc. 69.

## II.   This Case

Like the Kingston Case, this case concerns the Biological Opinion and CWA § 404 permit for a development project (known as Rural Lands West (RLW)) on former agricultural lands in Southwest Florida (Collier County). *See* Compl. ¶¶ 62-64, Doc. 1. As in the Kingston Case, Plaintiffs here focus their allegations on the federal agencies' analysis of impacts to the Florida panther. *See id.* Indeed, Plaintiffs assert an interrelation between development activities in Lee and Collier Counties throughout their complaint. *Id.* ¶¶ 3, 12, 46, 76.

4

Like the Kingston Case, Plaintiffs' first claim for relief challenges the RLW Biological Opinion's treatment of the Florida panther under the ESA and APA. *Id.* ¶¶ 93-100. Like the Kingston Case, Plaintiffs argue that the RLW Biological Opinion "failed to rely on the best available scientific evidence," *id.* ¶ 95, failed to consider "whether the baseline condition of the panther across its range and in the Action Area is currently jeopardized," *id.* ¶ 96, and relied on "monitoring and mitigation measures that are vague, uncertain to occur, and fail to meaningfully address the threats to the panther," *id.* ¶ 99. Like the Kingston Case, Plaintiffs criticize the analytical and legal framework employed by FWS to consider offsite collisions between vehicles and panthers. *Id.* ¶¶ 86-88. And like National Audubon Society in the Kington Case, Plaintiffs ask the Court to declare violations of the ESA and APA, vacate and set aside the RLW Biological Opinion and CWA § 404 permit, and enjoin further approvals from the Corps. *Id.*, Prayer for Relief.

No substantive events have occurred in this three-week-old case.

## III.   Overlap Between the Two Cases

As is clear from the above descriptions, this case and the Kingston Case overlap in important respects. Both cases concern the same federal defendants' analyses of the impacts on the Florida panther of the same types of federal actions related to development projects in Southwest Florida. As a result, the cases raise the same issues related to alleged violations of the ESA and APA.

| Kingston Complaint | This Complaint |
| --- | --- |
| **Named Defendants** | |
| Corps and FWS | Corps and FWS |
| **Challenged Actions** | |
| Corps CWA § 404 Permit, FWS Biological Opinion and FWS Incidental Take Statement | Corps CWA § 404 Permit, FWS Biological Opinion and FWS Incidental Take Statement |
| **Location of Permitted Work** | |
| Lee County (prior agricultural land) | Collier County (prior agricultural land) |
| **Claims for Relief** | |
| **¶¶ 105-10, 123-30** Alleged Violations of ESA and APA by FWS and Corps<br><br>**¶¶ 111-22** Alleged Violations of CWA and NEPA by Corps | **¶¶ 93-105** Alleged Violations of ESA and APA by FWS and Corps |
| **Best Available Science** | |
| **¶ 107** The FWS's BiOp failed to "use the best scientific and commercial data available" in determining that the project will not jeopardize the endangered species-including (1) in its analysis of the impact of the project on habitat degradation and critical large mammal habitat corridors or linkages, downplaying or ignoring the importance of the connected regional habitat to the survival and recovery of the Florida panther and other endangered and threatened species and (2) ignoring the best available data regarding panther vehicle mortality. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402. | **¶ 95** In issuing the BiOp—including its conclusions that the proposed action will not jeopardize the panther's survival or recovery prospects—FWS failed to rely on the best available scientific evidence, and thus violated Section 7(a)(2) of the ESA, its implementing regulations, and acted arbitrarily and capriciously in violation of the APA, 5 U.S.C. § 706(2). |

| Kingston Complaint | This Complaint |
|---|---|
| **Environmental Baseline** | |
| ¶ **108** The FWS's BiOp arbitrarily and capriciously evaluated the current status and environmental baseline of the listed species, the effects of the action, and cumulative effects on the listed species in determining that the project will not jeopardize the endangered species-including by unlawfully purporting to include panther vehicle mortality attributable to this Project instead as part of the "environmental baseline" and/or its "cumulative effects" analysis. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402. | ¶ **96** By failing to consider (let alone determine) whether the baseline condition of the panther across its range and in the Action Area is currently jeopardized prior to the implementation of the proposed action that will only worsen its condition at every scale, FWS violated Section 7(a)(2) of the ESA, its implementing regulations, and acted arbitrarily and capriciously in violation of the APA, 5 U.S.C. § 706(2). |
| **Take Triggers for Reinitiation of Consultation** | |
| ¶ **109** The FWS's BiOp arbitrarily and capriciously concluded that the proposed agency action would not result in the "take" of a listed species, the Florida panther, as a result of increased vehicle traffic generated by the Project, failing to specify both the amount of take and clear triggers at which allowable incidental take is exceeded and the FWS must reinitiate consultation. 50 C.F.R. § 402.14(g)(7)-(8) (requiring "a statement concerning incidental take, if such take is reasonably certain to occur"); *id.* § (i). | ¶ **100** By relying on an arbitrary surrogate to specify the amount of incidental take authorized by the BiOp—i.e., a trigger that authorizes a level of take that is co-extensive with the Project and that FWS concedes cannot be monitored—and failing to specify measures that would effectively minimize take, FWS violated Section 7(a)(2) of the ESA, its implementing regulations, and acted arbitrarily and capriciously in violation of the APA, 5 U.S.C. § 706(2). |
| **Focus on FWS Framework for Analyzing Panther Vehicle Mortality (PVM)** | |
| ¶ **62** Instead of identifying incidental take for PVM, the FWS proposes to monitor the number of vehicle collisions with panthers and take steps necessary to reduce this number if it exceeds the annual current average of three panthers per year within 10 miles of the | ¶ **70** [B]reaking from its forty-five-year practice of considering the likelihood of motor vehicle collisions as an indirect effect of increased human activity, the BiOp merely mentioned "general traffic impacts to panther[s]" in its discussion |

7

| Kingston Complaint | This Complaint |
|---|---|
| project. . . . This is not a clear numeric trigger at which the FWS would be required to reinitiate consultation to ensure that incidental take was not so large as to jeopardize the species. . . .<br><br>¶ **127** The BiOp impermissibly evaluated the current status and environmental baseline of the listed species, the effects of the action, and cumulative effects on the listed species in determining that the project will not jeopardize the endangered species—including by unlawfully purporting to include panther vehicle mortality attributable to this Project instead as part of the "environmental baseline" and/or its "cumulative effects" analysis. | of the "environmental baseline or cumulative effects."<br><br>¶ **88** Neither the BiOp nor the ITS provided a numerical trigger or any method to ascertain whether a vehicle collision in the Action Area is "attributable" to the Project. To the contrary, FWS's current position, as articulated in the BiOp, is that "future [panther vehicle mortality] cannot be attributed to the [Project]." |

8

## ARGUMENT

Given the overlap between this case and the Kingston Case, Collier respectfully requests that the Court transfer the case.  Doing so will minimize the risk of conflicting outcomes on the ESA and APA claims, avoid the need for two judges to expend resources on the complex issues implicated by these cases, and produce a more efficient resolution of this later-filed case.

Local Rule 1.07 provides that "[i]f actions before different judges present the probability of inefficiency or inconsistency, a party may move to transfer the later-filed action to the judge assigned to the first-filed action."  Local Rule 1.07(a)(2)(B).  Here, there is a probability of both inefficiency and inconsistency if the cases continue to proceed before different judges.

First, there can be no question that the two cases present a possibility of inconsistency.  The plaintiffs in both actions have sued the same federal defendants.  In doing so, the plaintiffs in both actions have alleged for their first and principal claims that the biological opinions for each project—issued by the same FWS office—violate the ESA and APA.  Kingston Am. Compl. ¶¶ 106-110; Compl. ¶¶ 93-100, Doc. 1.  And because the same FWS office applied the same analytical framework to identify impacts on the panther, including with respect to panther vehicle mortality, the plaintiffs in both cases have raised overlapping arguments regarding the best available data, assessment of the environmental baseline, and panther vehicle mortality. *Id.* In light of this overlap in substance, there is a clear potential for divergent or conflicting conclusions by different judges on the same legal questions.  Transfer to the judge

9

overseeing the first-filed case, who has already preliminarily addressed the merits of the claims, would help avoid the risk of inconsistency.

Second, transferring the case would foster efficiency and judicial economy. Both cases require application of specific areas of environmental law in the context of federal agency administrative records developed over years-long federal inter-agency permitting processes involving similar federal agency actions. By necessity, these cases demand a substantial up-front investment of judicial time and resources to assess the full scope of the factual and legal background. Because the Kingston Case has been proceeding for eight months, and a substantive preliminary injunction motion has already been presented and decided, Judge Dudek has a significant head start. Transfer would allow him and his staff to efficiently apply the experience gained through the Kingston Case to this litigation. At the same time, it would avoid the need for two judges and their staffs to duplicate efforts studying and deciding nearly-identical claims raising nearly-identical issues in parallel fashion.

Finally, given the current schedules of the cases, there is a good chance that the Kingston Case will be decided well before this case. The deadline for dispositive motions in that case has already been set for May 8, 2026. Kingston Case, Doc. 69. This case, on the other hand, is just getting started. Defendants' responsive pleadings are not even due until June 8, 2026. *See* Order, Doc. 16. Once Judge Dudek decides the ESA and APA claims regarding the best available data, assessment of the environmental baseline, and monitoring for panther vehicle mortality in the Kingston Case, he will be well-positioned to consistently and efficiently consider this case. In

other words, the efficiencies presented by transfer would likely translate to a faster decision for the parties and a reduced burden on the court system.

Plaintiffs filed a response to Collier's Notice of Related Action, asserting the cases are not related. *See* Plaintiffs' Response to Notice of Related Case, Doc. 18. Plaintiffs are mistaken. First, while the plaintiffs are not the same and the administrative records are not identical, *see id.* at 1-2, the federal agency defendants *are* identical. Those defendants applied the same statutory and regulatory requirements to, and followed a consistent analytical framework for, both projects. It is their analysis—not anyone else's—that is challenged in both cases. *Cf. Singh v. McConville*, 187 F. Supp. 3d 152, 157 (D.D.C. 2016) ("The fact that the Court will conduct an individual analysis with respect to each plaintiff . . . does not obviate the need for factual determinations related to the defendants' regulations and policies, and their administration of those regulations and policies, which are common to both cases."). Second, the "additional issues" Plaintiffs claim this case raises are either illusory or overshadowed by their fundamental similarities with the Kingston Case. *Compare* Kingston Am. Compl. ¶¶ 108-09 (challenging the FWS's evaluation of "the current status and environmental baseline of the listed species," and the enforceability of proposed monitoring and mitigation methods) *with* Doc. 18 at 2 (arguing "baseline jeopardy" of the panther and "enforceable mitigation measures" are not at issue in the

Kingston Case).[2]  Finally, these cases raise much more than "a common cause of action," as Plaintiffs suggest.  Doc. 18 at 3.  They raise the same principal claims, identify the same kinds of issues regarding the same type of analysis performed by the same agency defendants, and focus on the same species in the same geographic area. In light of this substantial overlap, evaluation by different judges "present[s] the probability of inefficiency [and] inconsistency."  Local Rule 1.07(a)(2)(B); *see McConville*, 187 F. Supp. 3d at 157 (concluding it "would waste judicial resources" for two courts to make factual determinations regarding overlapping federal policies).

## CONCLUSION

For the foregoing reasons, Collier respectfully requests transfer pursuant to Local Rule 1.07(a)(2)(B).

**Pursuant to Local Rule 3.01(g)**, counsel for Collier Enterprises contacted counsel for Plaintiffs and Defendants for their positions on this motion by phone and email.  Plaintiffs oppose the motion and intend to file an opposition within seven days. The Federal Defendants take no position on the motion.

Respectfully submitted,

 /s/ *Jamie Zysk Isani*
Jamie Zysk Isani
(Fla. Bar No. 728861)
HUNTON ANDREWS KURTH LLP
333 SE 2nd Avenue, Suite 2400
Miami, FL 33131
(305) 536-2724
jisani@hunton.com

---

[2] Plaintiffs acknowledge this case sweeps narrower than the Kingston Case, Doc. 18 at 2 n.1, making it an ideal candidate for relation to the earlier-filed case.

12

Andrew J. Turner (*pro hac vice forthcoming*)
E. Carter Chandler Clements (*pro hac vice forthcoming*)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 955-1658
aturner@hunton.com
eclements@hunton.com

George P. Sibley, III (*pro hac vice forthcoming*)
J. Pierce Lamberson (*pro hac vice forthcoming*)
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
(804) 788-8716
gsibley@hunton.com
plamberson@hunton.com

*Counsel for Defendant Tarpon Blue Silver King I, LLC d/b/a Collier Enterprises*

13

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2026, I electronically filed this motion with the Clerk of this Court by using the CM/ECF system.  The participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

_/s/ Jamie Zysk Isani_
Jamie Zysk Isani