**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

THE CENTER FOR BIOLOGICAL DIVERSITY, et al.,

Plaintiffs,

v. Case No. 2:26-cv-1072-SPC-KRH

BRIAN NESVIK, in his official capacity as Director of the United States Fish and Wildlife Service, et al.,

Defendants.

_____________________________/

**ORDER**

Before the Court is Plaintiffs Center for Biological Diversity, Sierra Club, and South Florida Wildlands Association's ("Plaintiffs") Motion to Complete the Administrative Record, or in the Alternative, to Supplement the Administrative Record. (Doc. 38). Defendants Brandon Bowman, Doug Burgum, William H. Graham, Jr., Brian Nesvik, and Larry Williams ("Federal Defendants") opposed. (Doc. 39). Intervenor Defendant Tarpon Blue Silver King I, LLC, d/b/a Collier Enterprises ("Tarpon Blue") also opposed. (Doc. 40). Plaintiffs replied. (Doc. 43). Having considered the parties' submissions and the applicable law, the Court denies the Motion. Still, a new summary judgment briefing schedule is needed.

## Background

This case arises from the Rural Lands West project (the "Project") in Collier

County and concerns the Project's impact on the Florida panther. Plaintiffs challenge two agency actions: (1) the U.S. Fish and Wildlife Service's ("FWS") February 25, 2025, Biological Opinion ("BiOp") and incidental take statement ("ITS") for the Florida panther (Doc. 38 at 19; BiOp at 1); and (2) the U.S. Army Corps of Engineers' ("Corps") October 2025 Clean Water Act § 404 permit. (Doc. 39 at 8).[1]

Plaintiffs bring Administrative Procedure Act ("APA") claims against FWS and Endangered Species Act ("ESA") citizen-suit claims against the Corps. (Doc. 1 ¶¶ 93–105). Among other things, Plaintiffs allege that the Corps "was informed of myriad, obvious flaws in the BiOp," so its continued reliance on the BiOp has resulted in ongoing violations of ESA § 7. (Doc. 1 ¶¶ 103, 105).

Both agencies certified their administrative records. (Docs. 39-1; 39-2). The parties then narrowed their disputes considerably. Federal Defendants agreed to add three items to both records: Plaintiffs' May 2025 reinitiation request, the request's over 100 attachments, and FWS's July 2025 response. (Doc. 39-2 ¶ 3). Federal Defendants also added a 2023 traffic analysis. (Doc. 38 at 13–14 n.9).

Three categories of documents remain in dispute: (1) Plaintiffs' January 20, 2026, notice of intent to sue ("NOI") and fourteen of its attachments, which

[1] The parties filed only the certified indices to the administrative record, not the record itself. (Docs. 39-1; 39-2). Both indices list the BiOp. (Doc. 39-1 at 34; Doc. 39-2 at 3). While not filed, the BiOp is publicly available and critical here. U.S. Fish & Wildlife Serv., Biological and Conference Opinion for Rural Lands West, Consultation Code 2023-0009323 (Feb. 25, 2025), https://www.fws.gov/sites/default/files/documents/2025-03/20250225_letter_service-to-corps_rlw-draft-boco_signed.pdf. Any BiOp pin cites refer to the document's internal pagination.

Plaintiffs ask the Court to add to the Corps' record; (2) a November 17, 2023, letter from Plaintiffs' counsel to two FWS officials ("2023 Letter"), which Plaintiffs want added to FWS's record; and (3) in the alternative, six prior biological opinions by FWS on other projects affecting the panther, along with FWS's 2009 Five-Year Review, which Plaintiffs want added to FWS's record by supplementation. (Doc. 38 at 7–8, 26–31).

## Legal Standard

Judicial review of agency action under the APA is based on the "whole record" before the agency at the time of the decision. 5 U.S.C. § 706. "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Courts "review an agency's compliance with . . . ESA under the deferential 'arbitrary and capricious' standard" of the APA." *Defs. of Wildlife v. Bureau of Ocean Energy Mgmt.*, 684 F.3d 1242, 1248 (11th Cir. 2012).

District courts within this Circuit have generally treated a request to add materials to an administrative record as taking one of two forms.[2] "[M]otions to complete [are] analytically distinct from motions to supplement." *Motivation, Inc. v. Ross*, No. 20-10140-CIV, 2024 WL 5433115, at *2 (S.D. Fla. Sept. 27, 2024) (quoting *Ctr. for Biological Diversity v. FWS*, No. 19-cv-14243, 2020 WL 2732340, at *8 (S.D. Fla. May 26, 2020)). A motion to complete the record seeks to add

[2] The Eleventh Circuit has not addressed whether separate standards govern these two avenues. The Court need not resolve that question here because the Motion fails under either framework.

materials "which were actually considered by the agency, yet omitted from the administrative record." *Id.* (citation omitted). A motion to supplement, meanwhile, seeks to add materials "which were not considered by the agency, but which are necessary for the court to conduct a substantial inquiry." *Id.* (citation omitted); *see Ctr. for Biological Diversity v. Off. of Surface Mining and Reclamation & Enf't*, No. 23-3343 (SLS), 2025 WL 1503802, at *8 (D.D.C. May 27, 2025).

Completion is the easier lift, but it isn't a low bar. "To prevail on a motion to complete the record, the plaintiff must overcome the presumption of regularity that attaches to an agency's designation by identifying 'reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record.'" *Ctr. for Biological Diversity*, 2020 WL 2732340, at *8 (citation omitted). The court assumes the agency properly designated the record "absent clear evidence to the contrary." *Arriva Med. LLC v. Sec'y of U.S. Dep't of HHS*, No. 19-80685-CIV, 2020 WL 5757084, at *2 (S.D. Fla. Sept. 28, 2020) (citation omitted). And any motion seeking completion of the record must "clearly set forth: (1) when the documents were presented to the agency; (2) to whom; (3) and under what context." *Id.* (citation omitted). Receipt is not enough. "The issue is not whether or not the agency had access to the documents." *Coastal Conservation Ass'n v. Locke*, No. 2:09-cv-641-FtM-29SPC, 2010 WL 1439071, at *2 (M.D. Fla. Apr. 12, 2010) (citation omitted). The relevant question is whether the agency "considered" those documents in reaching its

decision. *See Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs* ("*PEACH*"), 87 F.3d 1242, 1246 n.2 (11th Cir. 1996) (describing record as consisting of documents "considered by the staff prior to the agency action").

Supplementation is harder. "[W]hile certain circumstances may justify going beyond the administrative record, a court conducting a judicial review is not generally empowered to do so." *Id.* at 1246 (cleaned up). In *PEACH*, the Eleventh Circuit noted four circumstances where the court may look beyond the administrative record: "(1) an agency's failure to explain its actions effectively frustrates judicial review; (2) it appears the agency relied on materials or information not included in the administrative record; (3) technical terms or complex subjects need to be explained; or (4) there is a strong showing of agency bad faith or improper behavior." *SOSS2, Inc. v. U.S. Army Corps of Eng'rs*, 403 F. Supp. 3d 1233, 1237 (M.D. Fla. 2019) (quoting *PEACH*, 87 F.3d at 1246 n.1).

Since then, the Eleventh Circuit has "focused pointedly" on the last exception. *Nat'l Mining Ass'n v. Sec'y, U.S. Dep't of Lab.*, 812 F.3d 843, 875 (11th Cir. 2016) (quoting *Ala.-Tombigbee Rivers Coal. v. Kempthorne*, 477 F.3d 1250, 1262 (11th Cir. 2007)). As a result, a party seeking supplementation "must meet a heavy burden to show that supplementation is necessary." *SOSS2*, 403 F. Supp. 3d at 1239 (quotation omitted).

Confusingly, Plaintiffs seek to complete or supplement the administrative record under typical APA standards. (Doc. 38 at 8–10). Yet they offer a concluding suggestion—if Plaintiffs lose this Motion, then all this was really for nothing in an

ESA citizen suit so long as they provide a passing reservation to offer everything at summary judgment anyway. (Doc. 38 at 31). Plaintiffs apparently rely on out-of-circuit cases for that belief. But the entire dispute right now is what the summary judgment record should look like. If this issue is for naught, it's unclear why the Court has been asked to address the matter while simultaneously excluding an allegedly dispositive position.[3]

At this time, the Court will not address the unbriefed issue of whether an ESA citizen suit impacts regular principles of APA record review. That issue might already be forfeited or waived by failing to raise it at the appropriate time—i.e., now. *See, e.g.*, *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) (explaining principle of party presentation); *United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) (explaining difference between forfeiture and waiver); *GSA Network v. Morath*, 821 F. Supp. 3d 753, 776–77 (S.D. Tex. 2026). With that said, the inquiry presented begins.

**Discussion**

The Court addresses each bucket of disputed documents in turn. Then the

[3] Along with this, there is a real question (as Tarpon Blue contends) whether a citizen suit provision could even apply here. Plaintiffs rely on "ongoing violations" for ESA purposes, citing *Bennett v. Spear*, 520 U.S. 154, 174 (1997). Yet *Bennett* specifically held that "maladministration of the ESA" does not qualify as a "violation of the ESA" for bringing a citizen suit. *Id.* (cleaned up). Stated different, parties did not have standing to challenge a biological opinion through the citizen suit provision—instead needing to sue under the APA. *Id.*; *see, e.g.*, *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1124 (9th Cir. 1997) ("In *Bennett*, the Court held that challenges to the adequacy of biological opinions . . . are not properly pled as citizen suit claims under Section 11(g)(1)(A) of the Act. The Court then held that such claims could be pled under the Administrative Procedure Act."). This order does not opine on any claim's sufficiency.

Court concludes a new briefing schedule is needed. Before doing all that, however, there is an overarching issue common to each group of records.

**A. Untimely Submission**

On their face, most documents that Plaintiffs want to include in the record predated the reinitiation request and FWS's response (i.e., they existed before May or July 2025). So it is unclear why, if these records were important, Plaintiffs neglected to include them within the reinitiation request. On its own, the delay in offering certain documents (which were available) prevents Plaintiffs from adding them to the administrative record now.

A brief timeline helps illustrate. On June 25, 2024, the Corps requested formal consultation from FWS. (Doc. 1 at 32). In November 2024, the Section 404 notice-and-comment period ended. (Doc. 43 at 6). On February 25, 2025, FWS issued the BiOp. (Doc. 43 at 6). On May 8, Plaintiffs requested reinitiation of the consultation. (Doc. 39-2 at 2–3). That reinitiation request included roughly 100 documents (with some individual documents alone exceeding 300 pages). (Doc. 39-2 at 3–6). On July 29, FWS responded to Plaintiffs' reinitiation request. (Doc. 39-2 at 2, 6). In late October, the Corps issued the permit. (Doc. 39 at 8; 39-1 at 35). On January 20, 2026, Plaintiffs sent Federal Defendants the NOI. (Doc. 38-2 at 2).

In dispute here are twenty-three documents, which fall into the three buckets detailed in Sections B, C, and D below. Based on simple dates, at least sixteen of the records at issue existed before Plaintiffs made their reinitiation

request. Those were eight NOI attachments (Attachments M, R, V, Y, HH, II, MM, TT; Section B below), the 2023 Letter (Section C below), along with six prior BiOps and a five-year review (Section D below). Any of these documents could have been included in Plaintiffs' reinitiation request. If they had been, they'd be part of the administrative record.

Federal Defendants argue (in part) that these records should not be included because Plaintiffs failed to include them within the reinitiation request. Plaintiffs ignore that argument entirely. Instead, Plaintiffs contend—without citing a single legal authority—that the Section 404 notice-and-comment period expired before the BiOp, is distinct from ESA decision-making, and doesn't allow public comment on BiOps. These arguments again disregard the fact that most of the disputed records could have been submitted by Plaintiffs during the notice-and-comment period. For example, if Plaintiffs wanted the 2023 Letter considered (or at least in the record), they seemingly could have submitted it during the notice-and-comment period in November 2024. (Doc. 38-8; Doc. 43 at 6). After all, the record contains vast written comments against the Project. (Doc. 39-1 at 5–34).

Regardless, assume Plaintiffs' argument is right: it still does not address the Federal Defendants' point that Plaintiffs could have submitted these records as part of the reinitiation. Where—as here—a party fails to offer opposition, it forfeits the issue. *E.g.*, *Campbell*, 26 F.4th at 872 (A "forfeiture is the failure to make the timely assertion of a right." (citation omitted)).

Crucially, it is undisputed that Plaintiffs requested reinitiation from FWS in

May 2025—submitting voluminous documentation in support. Although the parties failed to provide the reinitiation request, it was obviously a comprehensive document, totaling 56 pages and over 100 exhibits. (Doc. 39-2 at 3). That is part of the current administrative record. And tellingly, of the fifty-four documents attached to the NOI, forty of them are otherwise within this record. (Doc. 38 at 9, 11 n.6; Doc. 39 at 11).

The fact of reinitiation with FWS over the BiOp is vital because (as Federal Defendants and Tarpon Blue emphasize) that BiOp is the nub of this entire dispute. Whether couched as an arbitrary past decision or capricious ongoing failure to act, the core of Plaintiffs' case is that the BiOp and its ITS were inadequate to support the permit issued by the Corps. That Plaintiffs believe Federal Defendants' refusal to change course is an ongoing violation is beside the point as to record completion or supplementation.

"The duty to reinitiate consultation lies with both the action agency and the consulting agency." *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1229 (9th Cir. 2008). Put differently, Plaintiffs could have sought reinitiation from FWS or the Corps. They sought reinitiation from FWS with the chance to offer the sixteen items identified above; yet Plaintiffs failed to include those records. So even if the NOI were considered a second reinitiation request, this information was previously available yet unprovided.[4] Plus, if failure to reinitiate was problematic

---

[4] While unbriefed, it's unclear how this information could even be "new" for the purpose of reinitiation. *See Save the Manatee Club v. EPA*, 813 F. Supp. 3d 1275, 1284–85 (M.D. Fla. 2024) ("The ESA requires reinitiation of consultation when new information reveals

and these records were the answer, Plaintiffs had another opportunity to submit them. FWS declined to reinitiate in late July; the Corps issued the permit in late October. So for almost three months *before* the permit was even issued, Plaintiffs did not seek reinitiation from the Corps. It was only about three months *after* the permit was issued that Plaintiffs sent the NOI.

More important to the instant dispute, however, Plaintiffs cannot meet their burden for APA completion or supplementation on these facts. There is no suggestion of anything to support the proposition that an administrative record should add documents that were not provided to the agency before a decision when the opportunity existed to do so. Federal Defendants are correct that such a conclusion would render administrative records a moving target—subject to change so long as plaintiff mails some new documents and says the claim is an "ongoing violation."

Plaintiffs want to protect Florida panthers; that's a laudable mission. Yet the APA does not permit engaged parties to lie in wait with troves of documents while an agency decides something only to spring those records later and claim the agency acted arbitrarily by failing to consider the material. If Plaintiffs wanted these papers in the record, they had a clear opportunity to do so (at least for sixteen disputed documents) during the reinitiation stage. Any implied argument that the

effects of the action are different or more extensive than those that the defendant previously considered." (cleaned up)); *Center for Biological Diversity v. U.S. Army Corps of Engineers*, No. 19-cv-14199-Middlebrooks/Maynard, 2020 WL 9073339, *8 (S.D. Fla. Aug. 28, 2020) ("[T]he ESA requires reinitiation only when the effects of the action are different or more extensive than those analyzed in the Biological Opinion." (cleaned up)).

later NOI provided the records that the Federal Defendants should have considered lacks merit for this reason alone. And by failing to address this issue, Plaintiffs forfeited any argument in response. Still, for these records, the Motion fails for the independent reasons articulated below.

The remaining seven documents may not have been available. One is the NOI itself—which certainly did not exist. The other six were NOI attachments. Attachment AAA was a local newspaper article that issued between the reinitiation request and response. (Doc. 38-3 at 3). While maybe it could have been submitted before the response, it post-dated Plaintiffs' request. The other five (Attachments LL, QQ, SS, ZZ, BBB) were undated website printouts. (Doc. 38-3 at 2–3). It's unclear when that information was first available to Plaintiffs. That said, these seven documents are not a proper part of the administrative record.

**B. The NOI and Attachments**

Plaintiffs say the NOI and its fourteen attachments belong in the Corps' record because the Corps received them. (Doc. 38 at 18–24). The Corps indeed received the NOI by email and mail in January 2026. (Doc. 38 at 9–10 & n.3; Doc. 39 at 3). But this NOI was again received nearly three months after the Corps issued the permit in October 2025. (Doc. 39 at 8). Federal Defendants therefore reason that the NOI and its attachments could not have been considered in issuing the BiOp or permit. (Doc. 39 at 3).

Plaintiffs see the matter differently. In their view, the reviewable conduct is not limited to the permit itself. It also includes the Corps' continuing reliance on

the BiOp after it received the NOI. (Doc. 38 at 20–21). Under that theory, the NOI is pre-decisional to an ongoing decision.

The Court is not persuaded because the Corps made no later decision in which it considered the NOI. In *Center for Biological Diversity v. U.S. Army Corps of Engineers*, the NOI and its attachments landed in the record because the Corps responded to them. The Corps initiated informal consultation, and FWS then issued a written concurrence declining to reinitiate. No. 19-cv-14199, 2020 WL 9073339, at *4 (S.D. Fla. Aug. 28, 2020). That concurrence was the decision under review. The outcome of *Save the Manatee Club* is similar. There, the agency prepared a Memorandum for the Record evaluating the NOIs and placed them in its record. *See Save the Manatee Club v. U.S. Env't Prot. Agency*, No. 6:22-cv-868-CEM-LHP, 2023 WL 4195043, at *6–7 (M.D. Fla. May 24, 2023).

That's not the case here. Plaintiffs concede that the Corps took no action on their NOI. (Doc. 38 at 10). An agency cannot consider a document as part of a decision it has never made. The closest thing to such a decision in this case is FWS's July 2025 refusal to reinitiate consultation. That decision is already in both records, along with every document Plaintiffs submitted to prompt it. (Doc. 39-2 ¶ 3). The question before the Court is therefore a narrow one: whether the NOI belongs in the record that the Corps certified for its permit decision. The Court concludes that it does not.

Plaintiffs also point out that Federal Defendants agreed, in another case, that the record should include "any ESA-related" NOI. Plaintiffs add that Federal

Defendants included an NOI there even though neither agency had responded to it. (Doc. 43 at 2 & n.3 (citing *Sierra Club v. FWS*, No. 2:20-cv-13-SPC-NPM, Doc. 66 at 3 (M.D. Fla. Jan. 19, 2021))). That may well be true. But federal agencies may agree to add documents to narrow a dispute in a particular case (as Federal Defendants did here) without categorically taking that position in separate future litigation. Such a voluntary addition does not show that the agency considered the document there. Nor does a litigation position in a different case determine what the Corps considered here.

To be clear again, the Court does not yet decide whether Plaintiffs' ongoing-violation theory states a claim. Tarpon Blue says the theory isn't justiciable. (Doc. 40 at 6–7 & n.1). Plaintiffs, on the other hand, say the ESA's citizen-suit provision reaches ongoing violations. (Doc. 43 at 6–7). That dispute is ultimately a merits fight. It belongs at summary judgment, not on a motion about the contents of the record. *See MedEnvios Healthcare, Inc. v. Becerra*, No. 1:23-cv-20068, 2023 WL 9692087, at *13 (S.D. Fla. Nov. 27, 2023); *Arriva*, 2020 WL 5757084, at *3 n.2.

Nor does the NOI disappear from the case. The NOI is a mandatory precondition to suit, and Federal Defendants offered to let it come in through a standing declaration. (Doc. 38 at 12). And if Federal Defendants inexplicably take a position, such as lack of jurisdiction, for failure to submit an NOI, the document will, of course, need to be in the record. The only question here, though, is whether it is part of the record the Corps considered. It is not.

The fourteen attachments fail for the same reason. They accompanied the

NOI, after the permit was issued, and they prompted no further agency decision. Post-decision documents do not complete a record. *Motivation*, 2024 WL 5433115, at *4. The fact that several attachments are FWS's own earlier opinions does not change this analysis as to the Corps' record. *See Nat'l Mining*, 812 F.3d at 875 (explaining that a "court does not consider any evidence that was not in the record before the agency at the time that it made the decision" (citation omitted)).

Plaintiffs counter that these materials, unlike those in *Sierra Club v. FWS*, were sent to the agency rather than first produced in litigation. (Doc. 43 at 2). But sending documents to an agency after it acts does not make them part of what the agency considered. And several of the attachments are exactly the kind of non-federal material this Court has declined to add to an administrative record, including a newspaper article, housing statistics, and website printouts. (Doc. 39 at 12); *see Sierra Club*, No. 2:20-cv-13-SPC-NPM, Doc. 87 at 12 (M.D. Fla. Sept. 30, 2021), *objections overruled*, Doc. 103 (M.D. Fla. Dec. 1, 2021).

As explained, the NOI and disputed attachments are not part of this record.

### C. The 2023 Letter

The Court turns next to the 2023 Letter. Plaintiffs' counsel sent the letter to certain FWS officials in November 2023. (Doc. 39 at 15). The letter argues that the panther is already in "baseline jeopardy" and urges FWS to undertake a particular analysis in "every future BiOp." (Doc. 38-8 at 14). Plaintiffs say it belongs in FWS's record because the agency's key decisionmakers received it while FWS was reviewing the Project. (Doc. 38 at 24–26).

Plaintiffs established when the letter was sent and to whom. The presumption of regularity, however, requires more. Plaintiffs must also offer non-speculative grounds for believing that the agency considered the document in making the challenged decision. *Arriva*, 2020 WL 5757084, at *2. In that respect, Plaintiffs' showing falls short.

*Motivation* is instructive, and it is Plaintiffs' best case. There, the court added documents sent to subordinate agency staff who shaped the challenged permits. 2024 WL 5433115, at *4. Those staff members considered the documents, so the final decision-maker indirectly considered them as well. *Id.* But the court drew a distinction. The admitted documents were pre-permit communications with personnel involved in the permit decision, and they "concerned the subject matter" of those permits. *Id.* Meanwhile, the court refused to add a 2014 historical study because nothing showed it "was in any way considered" in connection with the decision. *Id.*

The 2023 Letter falls on the study's side of that line. Plaintiffs argue the letter applies to every future panther consultation, and so, in a general sense, to this one. (Doc. 38 at 25). But it does not mention Rural Lands West. (Doc. 39 at 15; Doc. 40 at 5). It was sent before the Corps requested consultation on the Project, and nothing in the BiOp suggests FWS considered it. Nor does the BiOp cite it. (BiOp at 41–43). A letter urging the agency to adopt a particular analysis of all future decisions does not concern the subject matter of any one of them. If it did, a party could place a document in every future administrative record simply by sending it

once. What remains is the fact that FWS staff received a letter on a related topic. That is receipt, not consideration. *See Coastal Conservation*, 2010 WL 1439071, at *2.

As explained, the 2023 Letter is not part of this record.

**D. The Prior BiOps and Five-Year Review**

The final category consists of six prior BiOps on other panther projects and FWS's 2009 Five-Year Review. Plaintiffs seek these materials primarily through supplementation. (Doc. 38 at 26–31). In reply, they add an argument for completion. (Doc. 43 at 4–5). Neither works.

**1. Completion**

Plaintiffs' completion argument rests on geography. They note that a BiOp's environmental baseline includes "the past and present impacts of all Federal, State, or private actions and other human activities in the action area." 50 C.F.R. § 402.02. The action area here covers all land within 25 miles of the Project. (BiOp at 9). The six prior BiOps evaluated projects within 35 miles of the Project, one within 15 miles, and each used a similar 25-mile action area. (Doc. 43 at 5). Because those action areas overlap at least in part with this one, Plaintiffs reason, the prior projects form part of this BiOp's baseline and FWS must have therefore considered those prior opinions.

That argument does not follow. Overlapping action areas do not place every prior project within this one. And even for a project that falls inside the action area, the regulation requires FWS to account for that project's *impacts*. It does not

require FWS to review the biological opinion that analyzed it. The BiOp's Environmental Baseline section recites the regulatory definition. (BiOp at 16). And the panther discussion that follows addresses on-site habitat, the panther focus area, the nearest den, density estimates, and documented mortality in the action area. (BiOp at 18–19).

The BiOp refers to prior consultations only once. FWS explains that its 25-mile action area "is consistent with action areas defined in our recent biological opinions for the panther." (BiOp at 9). But that generic reference supports a single methodological choice. It identifies no project and says nothing about the six documents at issue. Nor does the Literature Cited list any project-specific BiOp. (BiOp at 41–43). Overlapping action areas may raise a question about what FWS reviewed, but they do not answer the question. And speculation cannot overcome the presumption of regularity. *Coastal Conservation*, 2010 WL 1439071, at *4; *Arriva*, 2020 WL 5757084, at *2.

**2. Supplementation**

That leaves Plaintiffs' alternative request for supplementation. Plaintiffs make no showing of bad faith or improper behavior by FWS, nor have they attempted to make one. Instead, they argue that bad faith is not always required. They say supplementation is permitted when necessary to determine whether the agency considered all relevant factors. (Doc. 38 at 16; Doc. 43 at 3–4 & n.4 (citing *Nat'l Mining*, 812 F.3d at 875 n.33)).

Even assuming that exception applies in this Circuit, courts have looked

beyond the record "only when the administrative record is so inadequate as to prevent the reviewing court from effectively determining whether the agency considered all environmental consequences of its proposed action." *SOSS2*, 403 F. Supp. 3d at 1238–39 (quoting *Miccosukee Tribe of Indians v. United States*, 396 F. Supp. 2d 1327, 1333 (S.D. Fla. 2005)).

The record before the Court, however, is not inadequate. It already contains numerous FWS consultation documents addressing other panther projects, submitted with Plaintiffs' May 2025 request, the 2008 Florida Panther Recovery Plan, and the 2012 Panther Habitat Assessment Methodology. (Doc. 39-2 at 3, 5–6). Plaintiffs argue that it is arbitrary to include those materials while excluding six functionally identical BiOps. (Doc. 38 at 29 & n.14). That argument, however, cuts the other way. If the excluded BiOps are functionally identical to the ones already in the record, then the Court has what it needs to conduct its review.

The Five-Year Review adds even less. It was issued in 2009. The record already contains more recent FWS assessments of the panther's status, including an October 2015 status-of-the-species document that FWS enclosed with the BiOp and a 2020 Species Status Assessment. (Doc. 39-2 at 3, 5; BiOp at 11).

What's more, Plaintiffs' core theory is that FWS discounts the cumulative loss of panther habitat to federally permitted projects. (Doc. 38 at 26–28). Whether that theory has merit will be resolved later. If FWS failed to account for prior federal projects in the environmental baseline, that failure will be apparent from the BiOp itself. (BiOp at 16, 18–19). Adding six more opinions would not show

what FWS considered. And if the Court needs context about other projects affecting the panther, the record contains numerous consultation documents addressing them (Doc. 39-2 at 3–6). Whether that means FWS failed to consider relevant information is a question the Court can answer at summary judgment based on the actual administrative record—not one created for the first time here.

As explained, the prior BiOps and five-year review are not part of this record.

**E. Summary Judgment Briefing**

Because the existing deadlines have passed, the case needs a new schedule to govern summary judgment briefing. (Doc. 37). Rather than set a schedule unilaterally, the Court seeks the parties' positions on the new deadlines. They must confer and file a joint notice identifying their proposed summary judgment schedule. All other provisions of the Court's scheduling order (Doc. 37) remain.

**ORDERED**:

1. Plaintiffs' Motion to Complete the Administrative Record, or in the Alternative, to Supplement the Administrative Record (Doc. 38) is **DENIED.**
2. The parties are directed to confer and file a joint notice stating their requested summary judgment deadlines **by November 16, 2026.**

In Fort Myers, Florida on November 4th, 2026.

Kevin R. Huguelet
United States Magistrate Judge